THE THOMAS A. SCOTT.[1]

(District Court, D. New York.   July 16, 1864.)

1. JURISDICTION—NATIONAL VESSEL—SALVAGE.

Where a libel was filed to recover compensation for salvage services rendered to a vessel, which, though not commissioned in the navy of the United States, was owned, manned, supplied, and armed by the United States, and used in the transport service, *held*, that the judicial tribunals of a country cannot entertain suits in which the sovereign power of that country is sought to be made a party respondent.

2. SAME.

*Held*, also, that the property of a state or nation cannot, as a general rule, be proceeded against in its courts.

3. SAME.

*Held*, also, that the court has no jurisdiction over the vessel in question, although she is merely a transport.

The libel in this case was filed by Charles Hargitt, master of the British steamer Labuan, on behalf of himself and the owners and crew of the vessel, against the propeller Thomas A. Scott, in rem, to recover salvage for services rendered to her on the 14th April, 1864.

The Labuan was bound from New York to Liverpool, but by stress of weather was compelled to put back to New York. On the way back, when about eight miles east of Barnegat light, she fell in with the Thomas A. Scott, bound from New Orleans to New York, in distress, having lost her rudder and propeller, and being out of provisions. The Labuan went down to her, and took her in tow, and towed her for about 18 hours, till she was taken in tow by a steam tug, about four miles below Sandy Hook, and brought into port. The propeller was valued at $200,000, and the libelant prayed for an award of salvage to the amount of $20,000. Process was issued against the vessel, and thereupon the district attorney of the United States appeared in the suit, and filed a claim on the part of the United States, and interposed a plea to the jurisdiction of the court. The plea alleged that the Thomas A. Scott belonged to the United States, and was in their exclusive possession; that she was bought by the war department of the United States, and paid for out of the appropriation for the support of the army; that she was not commissioned in the navy, but belonged to a class of vessels owned, manned, supplied, and armed by the United States, and employed for purposes connected with the operations of the army; that the Scott was, at the time she was fallen in with, returning from New Orleans, whither she had carried a load of powder, shot, and shell, for the use of the army, and that she had been, while owned by the United States, employed in transporting troops; commissary, quartermaster, and ordnance supplies; that she was armed with two 32-pound brass guns, and one 30-pound Parrott gun, and was a public armed vessel of the United States. Therefore the plea denied the jurisdiction of the court.

Da Costa & Marvin, for libelant.

Andrews, Asst. Dist. Atty., for respondents.

[1] The above-entitled case is referred to in the Federal Cases (Case No. 13,920) as "Nowhere reported." We now learn, through the courtesy of Arthur H. Russell, Esq., of the Boston bar, that this case was reported by R. D. Benedict, Esq., and published in 10 Law Times, New Series, p. 726, and this report of that case is herewith reprinted for the purpose of supplying in the Federal Reporter every case which has been inadvertently omitted from the Federal Cases.

SHIPMAN, District Judge. It is a well-known rule of law that the judicial tribunals of a country cannot entertain suits in which the sovereign power of that country is sought to be made a party respondent. Neither can the property of the state or nation, as a general rule, be proceeded against in its courts. In conformity with this rule, it was held in the court of admiralty in England, in 1816, in the case of The Comus, cited on the discussion in the case of The Prins Frederik, 2 Dod. 464, that a libel for salvage would not lie against public armed ships of that nation. After a somewhat diligent search, no case has been found where a public armed vessel, or any other public property, the title and possession of which was exclusively vested in the sovereign, has been held amenable to judicial process, unless, indeed, cases of prize may be said to partake of such a character. It has, indeed, been held that, in cases of general average, the masters or owners may retain all goods in their possession until their share of the contribution is either paid or secured. U. S. v. Wilder, 3 Sumn. 308, Fed. Cas. No. 16,694. The discussion, in the opinion of this case delivered by Story, J., takes a wide range, and it is perhaps inferable from parts of it that in cases of the salvage of private ships the goods of the United States on board should be held equally subject to the admiralty process in rem for their proportion of the salvage due. But I do not understand the point decided to go beyond the case of general average, where goods of the government form part of the cargo on board of a private vessel. Still, it must be admitted that a case of salvage of a private ship, where part of the cargo belonged to the sovereign power, could not be very well distinguished from the one decided by Judge Story. In cases of general average and salvage, the masters or owners have a lien on the res salved; but the learned judge, in the case just cited, remarks that "in such cases the nature and use of the articles, as the means of military and naval operations, may repel any notion of any lien whatever grounded on the obvious intention of the parties." These remarks were made with reference to arms, artillery, camp equipage, and such like materials of war belonging to the government as might be shipped with other cargo of a merely private nature, for transportation in a private ship. This court is informed that the government has invariably acquiesced in the rule laid down in the case of U. S. v. Wilder, by paying general average on its own goods shipped as a part of the cargo of private vessels. Whether this acquiescence has extended to military stores in time of war, and designed for use in active military operations, the court has no means of determining. Certainly the argument ab inconvenienti against the sovereign power submitting its military materials designed for active hostilities to the unavoidable delays of judicial tribunals is very formidable. This argument applies with as much force to the case of judicial proceedings against transport ships as to their cargoes, consisting of supplies and munitions of war. Indeed, both the transport ship and cargo would often be involved in the delay consequent upon any proceeding in the court against either. A number of cases have been cited on the argument by the counsel for the libelant in support of the jurisdiction of the court, which I will now notice. The first is the case of The Betsey, 1 Marr. 80. This case

was determined by the English court of admiralty in 1777, and related to the recapture, by one of the king's ships, of a vessel which had fallen into the hands of the Americans. The navy board contended that the demand of the officers of the king's ship of one-eighth salvage was not within the act of parliament, as that extended only to ships and goods of his majesty's subjects retaken from the enemy. But the court held that of common right salvage is always due for recapture, and therefore it would be illiberal to construe the act of parliament narrowly. The case is not very fully reported, but I infer from it that, prior to the prize acts of parliament, it had been, under some form of proceeding, customary for the admiralty courts to decree salvage to the naval officers of the king's ships instrumental in the recapture of vessels taken by the enemy, and that the custom in 1777 was expressly recognized and implicitly sanctioned by acts of parliament then in force. The next case cited was that of The Marquis of Huntley, decided in 1835, and reported in 3 Hagg. Adm. 246, chartered by the government and having government naval and ordnance stores, together with a lieutenant and several invalid soldiers, on board. On her voyage from Leith to London she got onto the Middle Hand, off Essex, where she experienced very bad weather, and finally was relieved from very great peril by several private vessels. An action for salvage was entered against the ship, cargo, and freight, and an appearance entered, and bail given, for the ship and freight only. When the case was ready for hearing, the court, having ascertained that no salvage had been paid on the stores, nor any account furnished of their value, expressed its opinion that in a case of such great merit, and where three lives had been lost, there ought to be a remuneration in respect to the stores, and directed the case to stand over, that the matter might be represented to the admiralty. This was done. The king's advocate appeared, and after stating the value of the stores, and that the government was anxious that the salvors should be rewarded liberally, left the amount of that reward to the judgment of the court. The case then proceeded. The case of The Athol, 1 W. Rob. Adm. 374, decided by Dr. Lushington in 1842, was instituted for damages caused by a collision. The facts were these: A brig was run down in the Channel by her majesty's troop ship Athol, and was totally lost. A memorial having been presented to the lords of the admiralty praying compensation, or otherwise that the admiralty proctor might be instructed to appear to answer to a suit to be commenced in the court, a letter was addressed to the proctor and owners of the lost brig by the secretary of the admiralty, stating that the lords commissioners declined to interfere. A motion was then made before Dr. Lushington for a monition against the lords of the admiralty, calling upon them to show cause why the damage should not be pronounced for, and compensation awarded to, the owners of the ship and cargo, and to the master and crew for the loss of their effects. · The judge declined to grant the motion, for the very good reason that he had no power to enforce an appearance or the payment of damages as against them. In the course of his opinion he says: "In cases of king's ships, loaded with cargo or treasure, salvage has been awarded; but no case has occurred within my recollection

in which the crown alone was concerned." The motion having been refused, on application by the proctor for the Athol the court directed that a communication should be made by the registrar to the lords of the admiralty, stating that the motion for a monition had been made to the court, and the lords of the admiralty subsequently directed that an appearance should be given by the admiralty proctor for the Athol, in order that the court might adjudicate upon the question. Two other cases were cited on the argument,—that of The Swallow and The Inflexible, both her majesty's ships (1 Swab. 30, 32). These, however, were suits against the commanders of these vessels, and not in rem against the ships. It was sought only to subject the officers personally, though the lords of the admiralty, in one case at least, directed an appearance in behalf of the officer. In none of the cases referred to, all of which I have noticed, has the English court attempted to deal adversely with the public property of the sovereign, except where there has been a voluntary appearance on its behalf, and a submission of the case to the judgment of the court, unless it be the case of The Betsy, in which I think the action of the court must have rested upon some act of parliament. It is unnecessary to remark that there is no act of congress conferring special jurisdiction upon our courts in cases like the present. On the whole, therefore, I conclude that the court has no jurisdiction over the Thomas A. Scott, even assuming her to be merely a transport. She is exclusively owned by the sovereign power, and therefore is not amenable to the judicial tribunals at the suit of private parties. The libel must, therefore, be dismissed as the cause now stands. But, inasmuch as the government may be desirous of making compensation to the salvors in case they are able to prove a meritorious claim for salvage, I will withhold the decree for the present, until the attorney can advise with the proper department, and take its direction in the matter.