## THE SAXON.

(District Court, E. D. South Carolina. January 5, 1921.)

1. **Intoxicating liquors** ⬡⟿246—Large iron steamship not necessarily subject to forfeiture; "boat;" "craft;" "water craft;" "steamer;" "steamship;" "vessel."

Under National Prohibition Act, § 26, providing that, when intoxicating liquors shall be seized, the officer shall take possession of any vehicle, boat, water craft, etc., in which it is transported, a large iron steamship of 10,000 tons, engaged in general commerce, is not necessarily subject to seizure because liquor was transported thereon through the unlawful act of members of the crew, especially as "boat," "craft," and "water craft" are usually applied to small vessels, while larger vessels, especially in the case of large iron steamships, are usually referred to by the terms "steamer," or "steamship," or "vessel."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Boat; Craft; Steamer; First Series, Steamship; First and Second Series, Vessel; Water Craft.]

2. **Intoxicating liquors** ⬡⟿247—Steamship not subject to sale for illegal transportation without knowledge of owner.

Under National Prohibition Act, § 26, providing that, when intoxicating liquors transported or possessed illegally shall be seized, the officer shall take possession of the conveyance, and that on conviction, unless good cause to the contrary is shown, the court shall order a sale of the property seized, good cause to the contrary is shown by showing that the owner of the conveyance was wholly ignorant and innocent of the illegal use thereof, and a large iron steamship, with a large crew, is not subject to sale and forfeiture because members of the crew, without the knowledge of the owners and in dereliction of their duties, have illegally transported intoxicating liquors for their individual purposes.

3. **Intoxicating liquors** ⬡⟿251—Seizure of steamship and requiring bond as condition of release held improper.

On the arrest of officers and members of the crew of a steamship for illegal possession and transportation of intoxicating liquors, where there was no charge or evidence that the owners knew the liquor was on board, it was improper to seize the steamship and require a bond for its production as a condition of its release.

Proceeding by the United States against the steamship Saxon. On application by the owner of the steamship for its release, and the cancellation of a bond given for its production. Steamship released, and bond annulled.

F. H. Weston, U. S. Dist. Atty., of Columbia, S. C., and J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C.

Miller, Huger, Wilbur & Miller, of Charleston, S. C., for defendant.

SMITH, District Judge. In this case an application is made for the cancellation of the bond given to procure the release of the steamer Saxon under the following circumstances:

The steamship Saxon is an American steamship about 20 years old, 330 feet in length over all, 40 feet 4 inches beam, double decked, and of 2,663 gross tonnage. Her home port is in the city of New York, state of New York. The Saxon is navigated by her owners, the Clinchfield Navigation Company, which is a domestic corporation, under the

laws of the state of New York, with its principal offices in the city of New York, and has until recently been engaged in carrying coal from the port of Charleston to the port of Havana, Cuba. The Saxon arrived in the port of Charleston, S. C., on December 20, 1920, from Havana, Cuba, in ballast; that on the arrival of said steamship in the port of Charleston, the federal prohibition agents, under the National Prohibition Act, boarded the vessel, found a quantity of liquor thereon, in the possession of the officers and crew of said steamship, who were thereupon arrested, and have been bound over for trial in this court for unlawfully manufacturing, selling, bartering, transporting, importing, exporting, furnishing, dealing in, and possessing intoxicating liquors, in violation of the National Prohibition Act, and have also been charged with conspiring to commit an offense against the United States.

The federal prohibition agents at the same time seized the steamship, and refused to release the vessel or permit her clearance, until a bond was given in the sum of. $15,000, conditioned. for the return of the steamship to the custody of the federal authorities on the day of the trial of the criminal prosecution against the said arrested parties.

In this state of affairs, the Clinchfield Navigation Company, the owner of the vessel, has applied to this court for relief, and to have the vessel released and the bond cancelled, alleging that, if intoxicating liquor was found by the federal prohibition agents upon the vessel, the officers and crew of the vessel who possessed the liquor are responsible for that; that the vessel was not engaged in transporting intoxicating liquors, but was engaged in commerce, in transporting coal; that the liquor was not a part of the cargo of the ship; that no consideration was received for its carriage; that the owners knew nothing whatsoever of the existence of the liquor on board of the ship; that it was without the knowledge or consent of the owners, who had in the most direct and positive way prohibited the master, officers, and crew from bringing liquor or alcoholic beverages of any character upon the boat.

The application of the owners is further to the effect that a steamship of this size is not a "boat" or "water craft," within the contemplation of the National Prohibition Act (41 Stat. 305), nor liable to seizure and detention in this way. Due notice of this application was given to the United States attorney for this district, who has appeared and been heard on the application. There is no dispute as to the facts as hereinbefore stated.

Section 26 of the National Prohibition Act provides that whenever an officer of the law shall discover any person in the act of transporting in violation of the law intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found thereon, being transported contrary to law. The section proceeds:

"Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the

owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. The court, upon conviction of the person so arrested, shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise," etc.

[1] Upon the consideration of this act it will be seen that the language used is that a person must be discovered in the act of transporting, in violation of the law, intoxicating liquor in any wagon, buggy, automobile, water or air craft, and following that the statute prescribes that whenever the intoxicating liquors being transported or possessed illegally shall be seized by an officer, he shall take possession of the vehicle and team, or automobile, boat, air or water craft, or any other conveyance.

The words used as applicable to the means of transportation by water are "water craft" and "boat." Ordinarily the term "boat" and the term "craft" are applied to water transporting conveyances of small character. As a rule, the word "boat" is used somewhat in contradiction to the word "vessel"—"vessel" being a boat of larger size, generally one fitted to navigate the high seas; while "boat" as a rule was applied to an undecked, small, open vessel.

Anterior to the application of propulsion to small boats by means of gasoline, so as to bring them within the class of self-propelled vessels, the word "boat" was usually applied to small, open vessels only, propelled by oars in the hands of oarsmen; although poetically, and otherwise, the term "boat" may be sometimes applied to a vessel of any size. The word "water craft," or the term "craft," as usually used, was applied to small vessels generally engaged in coastwise or domestic navigation. For larger vessels, as used in the present day, especially in the case of large iron steamships, the terms "steamer," "steamship," or "vessel" are generally used. Unless, therefore, the generality of the language of the statute be sufficient to embrace vessels used in water transportation, of any size, and of any kind, the words of the statute in this case would not cover a large iron steamship.

But, more than this, the intention of the statute is to be regarded. The intention of the statute is that the officer shall seize water craft or boat or land means of transportation which are actually engaged in the transportation of intoxicating liquors as its purpose so to say. Where that purpose is merely incidental, and carried on illegally by some one upon the vehicle or water craft, it would not necessarily come within the purport and intention of the law to seize the conveyance. An automobile carrying liquor, and evidently engaged in it for that purpose, for the occasion, at least, would clearly be within the terms of the law. But a railway train, upon which liquor may be found, which is being illegally transported by some employee or passenger, would not be liable to summary seizure, as would be an automobile. So, a small or comparatively small boat, or sailing boat, or gasoline- or steam-pro-

pelled small vessel, which at the time it is used for that purpose, at the time, as the main purpose of its then employment, would be subject to seizure under the statute. But if a large vessel of 10,000 tons, engaged in general commerce, such as the transportation of general merchandise, as its purpose and object, had liquor aboard only incidentally, through the unlawful act of some member of the crew, it would not necessarily be subject to seizure. The ancient and immemorial maxim of the law is that ships were made to plow the seas, and should be released, as far as possible, from all detention that would prevent them from accomplishing that main and primary purpose.

[2] It is further to be remarked that the statute does not forfeit in express terms a vehicle or means of conveyance upon which liquor is found, but only declares that, upon conviction of the person arrested, the property seized shall be sold by the court unless good cause to the contrary is shown by the owner. Good cause to the contrary would certainly be that the owner of the method of transportation, whether it be by vehicle or watercraft, was wholly ignorant and innocent of the illegal use of his property. For instance, if a man left his automobile in the street, and it was unwarrantably taken possession of by an evildoer, who transported liquor in it, it would not be sold. So if a vessel was at anchor, and was seized and taken possession of by an evil-doer, who then proceeded to subject it to the unlawful uses of transporting liquor, good cause to the contrary would be shown in the innocence of the owner, and the property would not be sold. It would likewise follow that a large iron steamship, in the employment and use of which likewise a large crew of officers and men is required, would not be subject to sale and forfeiture, because one or more of the crew, without the knowledge or assent of the owners and in dereliction of their duties, were to seek to use the vessel to carry out for their own individual purposes the illegal transportation of intoxicating liquors.

[3] The officers and members of the crew, in whose possession was found this liquor, have been arrested and bound over for trial. There is no charge or evidence that the owners of the vessel were aware the liquor was on board. To allow the vessel to remain tied up and not performing the purpose for which she is created until these parties are tried, when they are mere employees, and not the owners, of the vessel, and when their conviction would in no wise necessarily lead to the forfeiture or sale of the vessel, would seem to be wholly useless. If the vessel, under the circumstances of this case, would not be held, then no bond should have been required for its production, and any bond given to procure its release was improperly required, and should be canceled. If the circumstances should show that through the improper use of the vessel it should be forfeited to the United States, then it can be libeled wherever found in the United States, and by proper proceedings, in which the owners can appear and defend their rights, an adjudication can be had.

It is accordingly ordered that the steamship Saxon be released from custody, and the bond given for its production be annulled.