## THE COLDWATER.

(District Court, S. D. Florida. August 9, 1922.)

Intoxicating liquors ⚖︎246—United States ⚖︎125—United States vessel, controlled by United States Shipping Board, not subject to forfeiture under National Prohibition Act.

　　A vessel which had been transferred by the United States to the United States Shipping Board, under Act June 5, 1920, § 4, was not subject to forfeiture for transportation of intoxicating liquor within the United States, under National Prohibition Act, tit. 2, § 26, in view of Act March 9, 1920, § 1, prohibiting seizure under judicial process of a vessel owned by the United States, and section 13, expressly repealing inconsistent provisions of other acts, since the transfer of the vessel to the Shipping Board did not divest the title out of the United States.

In Admiralty. Libel by the United States against the American steamship Coldwater, for forfeiture for transportation of intoxicating liquor within the United States. On libelant's motion for process of attachment and monition, and on respondent's motion to dismiss libel. Process of attachment and motion denied, and libel dismissed.

Maynard Ramsey, Asst. U. S. Atty., of Jacksonville, Fla., for libelant.

Kay, Adams & Ragland, of Jacksonville, Fla., for respondent.

CLAYTON, District Judge. This cause is submitted on the motion of the United States for process of attachment and monition against the American steamship Coldwater, and also upon the motion of the respondent to dismiss the libel.

On July 27, 1922, the American steamship Coldwater, owned by the United States, controlled by the United States Shipping Board under Act of Congress acting for the United States, but the ship being under charter to the Carolina Steamship Company, a private shipping corporation, arrived in the United States with a cargo from Nordenham, Germany. The cargo consisted of merchandise and alcoholic liquors. By direction from the Department of Justice the District Attorney filed this libel against the Coldwater for forfeiture as provided by section 26, title 2, of the National Prohibition Act (41 Stat. 315).

The libel alleges that said vessel then and there imported into and transported within the United States certain intoxicating liquors, and that parts of said intoxicating liquors were sold on board of said vessel while lying in port at Jacksonville, Fla., contrary to the provisions of the National Prohibition Act and without permit to do so, as provided in and by said act. It is also alleged that the Coldwater is owned by the United States Shipping Board, "an entity created by an act of Congress," and it is prayed that process of attachment and monition issue against said vessel, whose forfeiture is sought by reason of said section 26 et seq. of the National Prohibition Act.

The Act of June 5, 1920, for the promotion and maintenance of the American merchant marine, etc., expressly transfers all vessels, etc. (with exceptions not necessary to be here stated), to the United States

⚖︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shipping Board. 41 Stat. pt. 1, p. 990, § 4. Of course, this is a statutory transfer of the vessels to a governmental agency of the United States, but it did not divest the title out of the United States.

In The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962, the Supreme Court recognizes the Shipping Board as a governmental agency, although in that case it was pointed out that section 9 of the Shipping Act of September 7, 1916, provides a remedy by libel in rem against the boat itself for certain maritime liens, which section was brought forward in Act July 15, 1918, § 3 (Comp. St. Ann. Supp. 1919, § 8146e), and Act July 18, 1918 (Comp. St. Ann. Supp. 1919, §§ 3115$^1$/$_{16}$f–3115$^1$/$_{16}$kk), in substantially the same terms. However, on March 9, 1920, in order to meet the decision in The Lake Monroe, Congress provided for a substitute for libel in rem against the vessel itself that a libel in personam could be brought for various maritime causes of action. This act, of course, was undoubtedly passed to obviate the inconvenience of having government-owned vessels arrested by libel in rem. See Ingram Day Lumber Co. v. United States Shipping Board Emergency Fleet Corporation (D. C.) 267 Fed. 283.

Section 1 of the Act of March 9, 1920 (41 Stat. p. 525), clearly prohibits the seizure under judicial process of a vessel owned by the United States. While repeal by implication would have taken care of the situation, yet the same act in section 13 expressly declares that the provisions of all other acts inconsistent with said act are repealed.

Under general principles, a suit cannot be maintained to forfeit property belonging to the government of the United States. 26 R. C. L. pp. 1458, 1459. In the case of Belknap v. Schild, 161 U. S. 10, on pages, 16, 17, 16 Sup. Ct. 443, on page 444 (40 L. Ed. 599), it is said in the opinion that—

"The United States, however, like all sovereigns, cannot be impleaded in a judicial tribunal, except so far as they have consented to be sued. This doctrine has been affirmed by this court in cases too numerous to be cited, and was clearly stated by Mr. Justice Field, delivering judgment in the case of The Siren, as follows: 'It is a familiar doctrine of the common law that the sovereign cannot be sued in his own courts without his consent. The doctrine rests upon reasons of public policy; the inconvenience and danger which would follow from any different rule. It is obvious that the public service would be hindered, and the public safety endangered, if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government. The exemption from direct suit is therefore without exception. This doctrine of the common law is equally applicable to the supreme authority of the nation, the United States. They cannot be subjected to legal proceedings, at law or in equity, without their consent, and whoever institutes such proceedings must bring his case within the authority of some act of Congress. Such is the language of this court in United States v. Clarke, 8 Pet. 444. The same exemption from judicial process extends to the property of the United States, and for the same reasons. As justly observed by the learned judge who tried this case there is no distinction between suits against the government directly and suits against its property.' 7 Wall. 152–154. So much of this statement as regards suits against the United States, or against their property was repeated by the present Chief Justice in the present case of Stenley v. Schwalby, 147 U. S. 508, 512."

In Orleans Navigation Co. v. Schooner Amelia, 7 Mart. O. S. (La.) 632, the court held that a vessel of the United States cannot be seized to compel the payment of toll. In The Thomas A. Scott (D. C.) 90 Fed. 746, in the headnotes it is stated that—

"1. Where a libel was filed to recover compensation for salvage services rendered to a vessel, which, though not commissioned in the navy of the United States, was owned, manned, supplied, and armed by the United States, and used in the transport service, held, that the judicial tribunals of a country cannot entertain suits in which the sovereign power of that country is sought to be made a party respondent.

"2. Held, also, that the property of a state or nation cannot, as a general rule, be proceeded against in its courts.

"3. Held, also, that the court has no jurisdiction over the vessel in question, although she is merely a transport."

And it is held in The Kittegaun (D. C.) 266 Fed. 897, that suit in personam against Emergency Fleet Corporation is not affected by statute, for it is said that—

"Act March 9, 1920, §§ 1, 2, prohibiting the arrest or seizure of vessels or cargoes owned or possessed by the United States, or by any corporation in which the United States owns the entire stock, and providing that, where suits in rem against such vessels or cargoes would be maintainable as against private owners, suits in personam may be brought against the United States or the corporation, as the case may be, has for its sole purpose preventing interference with the operation of government owned or controlled vessels employed in commerce, by substituting for suits in rem authorized by Shipping Board Act Sept. 7, 1916, § 9 (Comp. St. § 8146e), suits in personam, and it has no application to a suit in personam against the United States Shipping Board Emergency Fleet Corporation, arising out of breach of contract."

The policy and purpose of the Act of June 5, 1920, is specifically stated in the first section to be—

"That it is necessary for the national defense and for the proper growth of its foreign and domestic commerce that the United States shall have a merchant marine of the best equipped and most suitable types of vessels sufficient to carry the greater portion of its commerce and serve as a naval or military auxiliary in time of war or national emergency, ultimately to be owned and operated privately by the citizens of the United States; and it is hereby declared to be the policy of the United States to do whatever may be necessary to develop and encourage the maintenance of such a merchant marine, and, in so far as may not be inconsistent with the express provisions of this act, the United States Shipping Board shall, in the disposition of vessels and shipping property as hereinafter provided, in the making of rules and regulations, and in the administration of the shipping laws keep always in view this purpose and object as the primary end to be attained." 41 Stat. 988.

From this declaration it is apparent that the United States, in the maintenance and operation of the merchant marine, is not engaged in a purely commercial enterprise, but that, on the contrary, Congress conceived that the establishment and operation of the merchant marine was the exercise of a governmental function of the highest importance, especially so in view of the world conditions prevailing at the time this act was passed, of which conditions the court takes judicial knowledge. The first section of said Act of March 9, 1920, clearly exempts United States Shipping Board vessels—i. e., those of a governmental agency—from seizure under judicial process, and the reason therefor is apparent, as tested by the foregoing cases.

The National Prohibition Act was passed October 28, 1919, and became effective January 1, 1920. The Act of March 9, 1920, being subsequent, provides that no vessel owned by the United States shall be subject to arrest or seizure by judicial process, and as this latter act by section 13 repealed the provisions of all other acts inconsistent therewith it is plain that a vessel owned by the United States is not subject to seizure.

In addition to the provisions of the Act of March 9, 1920, which is conclusive of this case, there is a serious doubt as to whether or not any vessel like a steamship, even where owned privately, as distinguished from small craft, is subject to seizure under section 26 of title 2 of the National Prohibition Act. In The Saxon (D. C.) 269 Fed. 639, it was held that under section 26 of title 2 of the National Prohibition Act—

"providing that, when intoxicating liquors shall be seized, the officer shall take possession of any vehicle, boat, water craft, etc., in which it is transported, a large iron steamship of 10,000 tons, engaged in general commerce, is not necessarily subject to seizure because liquor was transported thereon through the unlawful act of members of the crew, especially as 'boat,' 'craft,' and 'water craft' are usually applied to small vessels, while larger vessels, especially in the case of large iron steamships, are usually referred to by the terms 'steamer,' or 'steamship,' or 'vessel.' "

Section 26, title 2, of the National Prohibition Act, provides, among other things, that when a federal prohibition officer shall discover any person in the act of transporting in violation of the law intoxicating liquors in any water craft, he shall arrest the person in charge thereof, and that upon a conviction of the person so arrested the liquor shall be destroyed, and, unless good cause to the contrary is shown by the owner, shall order the sale by public auction of the property seized and disburse the money in the manner therein set forth. It is further provided that all liens against property sold under the provisions of this section shall be transferred from the property to the proceeds of the sale of the property.

The effect of this section is to forfeit all rights of the offender in and to the offending vessel to the United States. Therefore, under the law as it now stands, the condition is here presented of a vessel owned by the United States which has been used for a violation of the laws of the United States, and by reason whereof such vessel is sought in a proceeding brought by the United States to be forfeited to the United States. If this libel be prosecuted to a successful conclusion by the United States, the inevitable and anomalous result will be that the United States will have its own property forfeited unto itself. But such absurdity cannot happen, for in addition to the general law forbidding, the Act of Congress, March 9, 1920, supra, takes care of the situation presented in this case, by prohibiting the arrest or seizure of this vessel of the United States, or in which it has an interest.

Accordingly the process of attachment and monition will be denied, and, process for libel being forbidden, the libel must be dismissed.