Zegmunt F. LESZYNSKI

v.

Ernst RUSS.

No. 12225.

United States District Court
D. Maryland,
Civil Division.

Jan. 31, 1961.

John J. O'Connor, Jr., O'Connor & Preston, Baltimore, Md., for plaintiff.

Jervis Spencer Finney, Ober, Williams, Grimes & Stinson, Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the plaintiff seeks to recover from the shipowner damages for personal injuries occurring on the ship while docked in the Baltimore Harbor. The question presently presented requires consideration and the proper application of the recent and heretofore not judicially considered Maryland Act relating to "watercraft". Md.Code 1957 art. 75, § 77, Acts of 1955, c. 186. The suit was originally filed in the Court of Common Pleas of Baltimore City by a citizen of Maryland against the shipowner, a citizen of Germany, and was removed by the latter to this court on the ground of diversity of citizenship. Upon filing an answer the defendant included therein as a special and preliminary defense the contention that the court did not effectively acquire personal jurisdiction over him by merely substituted or constructive service upon the Secretary of State, as provided for, on certain conditions, by the Maryland Act.

The text of the Act passed in 1955 is as follows: "§ 77. Service on nonresident owner or operator of watercraft; where such owner or operator suable.

"(a) The acceptance by a nonresident individual, firm or corporation of the rights and privileges of using the waterways of Maryland, shall be deemed equivalent to an appointment by the nonresident of the Secretary of State

as attorney upon whom may be served all lawful process *in any action against the nonresident growing out of an injury to person or property of a Maryland resident occurring in Maryland which results from the operation of said watercraft while operated, or caused to be operated by said nonresident.* Service shall be made in the same manner and with the same consequences provided for service of nonresident motor vehicle owners or operators in Article 66½, § 115(a)–(f), inclusive, as amended from time to time." (Italics supplied.)

The first question which naturally occurs is whether this statute is valid and effective notwithstanding the provision of the federal 14th Amendment that "nor shall any State deprive any person of life, liberty, or *property* without due process of law". (Italics supplied.) Counsel have not argued this point nor has there been any factual evidence submitted which would probably be important for consideration as a basis for decision; but as the Act has not heretofore been judicially considered, so far as I can ascertain, by any Maryland state court or by this federal court for Maryland, I think it worth while in passing to mention some considerations that may hereafter in a proper case be relevant on the point.

There is no doubt that the Act was considered and passed by the Legislature in due course and became effective on June 1, 1955. We do not have the benefit of any legislative history which would be legally helpful. Counsel for the defendant has offered to show by Senator Dempsey who introduced the Bill, what was his intention but in the absence of any committee report on the Bill I do not think it would be permissible to consider the individual intention of the member of the Legislature who introduced the Bill. The nearest approach that I have been able to find to any legislative history seems to have been a notation made in the Department of Legislative Reference to the effect that in its drafting of the particular language of the Act reference had been made to a somewhat but not wholly similar recent statute passed in Louisiana, and also more particularly to the well-known Maryland Act providing for constructive service on nonresident motorists by service on the Secretary of State. Md.Code of 1957, art. 66½, § 115. In Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 633, 71 L.Ed. 1091, the Supreme Court sustained the federal constitutional validity of the similar and original Massachusetts statute regarding nonresident motorists (M.G.L.A. c. 90 § 3A). Probably the most significant sentence in that opinion was "The difference between the formal and implied appointment is not substantial, so far as concerns the application of the due process clause of the Fourteenth Amendment."

Quite obviously the watercraft statute affecting nonresident vessel owners is patterned after the nonresident motorist statute. But it occurs to me that there possibly might be some difference between the consent implied in the use of Maryland highways for motor travel, largely created by the state itself, and the use of navigable waterways of the state, not provided by the state but by natural conditions, except possibly in docking facilities. And again it is not to be forgotten that special consideration perhaps ought to be given to the vast importance to Baltimore City, and indeed incidentally to the State as a whole, of navigable waterways. However I do not think the case as presently presented on the pleadings alone warrants further present discussion of the particular point. I should also mention that I have noted that the Louisiana statute heretofore referred to has been sustained as "due process" by two federal district courts in Louisiana and also in Illinois. See Tardiff v. Bank Line, D.C.E.D.La. 1954, 127 F.Supp. 945; Goltzman v. Rougeot, D.C.W.D.La.1954, 122 F.Supp. 700; Frase v. Columbia Transp. Co., D.C. N.D.Ill.E.D.1957, 158 F.Supp. 858.

In the instant case the defendant shipowner who is said to be bound by substituted service is an individual and

not a foreign corporation. For an interesting opinion as to the scope of federal due process by substituted service see Harris v. Craig, Baltimore Daily Record December 3, 1960, opinion by Judge Warnken, associate judge of the Supreme Bench of Baltimore, dealing with a nonresident individual and not a foreign corporation. And as to the scope generally of federal due process by substituted service see Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, and recent cases discussed therein. The recent Supreme Court cases are to the effect that the legal validity of substituted service depends importantly upon what substantial contact the nonresident defendant has had with a state whose substituted service is involved. In the instant case, so far as it presently appears from the record, the only contact that the defendant shipowner had with Maryland was the one voyage to Baltimore.

■ The question that is presently presented is whether the language of the Act is properly applicable to the instant case. The declaration or complaint in the State Court alleges that the plaintiff was an employee not of the shipowner but of the Baltimore Stevedoring Company, which by contract with the shipowner undertook the unloading of the ship's cargo consisting principally of Volkswagon automobiles produced in Germany. The plaintiff says that he was injured because "he was caused to fall" in his work and there are general allegations that his fall was caused by the negligence of the shipowner in failing to provide a safe place to work, and that the ship was unseaworthy. Although the plaintiff was not an employee of the ship, and presumably was entitled to the "compensation" benefits under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., he is entitled to have a "third party action" against the shipowner if his injuries were proximately caused by the negligence or unseaworthiness of the ship, as was determined by the Supreme Court in the now well-known case of

Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

It will be noted that the Maryland Act is applicable only where the accident or injury *results* from "the *operation* of said watercraft while operated, or caused to be operated by said nonresident." (Italics supplied.) And the Act mentions by description only "watercraft" while the somewhat earlier Louisiana Act specifically included in addition to the general term "watercraft", "boat, ship, barge or other watercraft."

Counsel for the shipowner contends that the Maryland Act by its very terms does not apply in the present case because (1) the general term "watercraft" is too inept a term to fairly include a large ocean going cargo ship such as is involved in the present case; [1] and (2) because the plaintiff's accident did not result from the operation of the ship as (a) the unloading of the ship while moored at the dock was not such an operation within the meaning of the Act which fundamentally is based on an operation of a kind necessarily involving the use of the waterways, implying necessarily movement of the ship on the waterways, and (b) because, as more particularly indicated in the plaintiff's complaint, his injury was due to his fall through an alleged unguarded opening in the deck of the ship, which in no case could reasonably be considered to have resulted from the operation of the ship. Counsel for the shipowner also submits the argument that in the instant case the unloading was not directly an operation by the shipowner but at most indirectly through the work of an independent contractor; and for that reason also should not be considered an operation of the ship itself.

In support of these contentions counsel for the shipowner cites cases arising under the nonresident motorist statutes based on the use of State highways, to the effect that an action occurring in the loading or unloading of a motor vehicle is not within the scope of the Act because not arising out of the use of the highways. Brauer Ma-

chine & Supply Co. v. Parkhill Truck Co., 1943, 383 Ill. 569, 50 N.E.2d 836, 148 A.L.R. 1208, (cited with approval but on another point in the Maryland case of Hunt v. Tague, 1954, 205 Md. 369, 109 A.2d 80); DeLuca v. Consolidated Freight Lines, D.C.S.D.N.Y.1955, 132 F.Supp. 863; Acuff v. Service Welding & Machine Co., D.C.E.D.Tenn.1956, 141 F.Supp. 294. Counsel have not cited and I have not been able to find any Maryland decision arising under the nonresident motorist statute with respect to the loading or unloading of a nonresident owner motor vehicle. And counsel have not cited and I have not been able to find any decision, federal or state, arising under any of the several nonresident vessel owners' statutes dealing with the application of the Act to the loading or unloading of a vessel. In addition to the Louisiana and Illinois statutes above mentioned, somewhat similar statutes have been enacted in Florida in 1959, in Ohio in 1959 and in Pennsylvania in 1959.

In support of the application of the Maryland Act to the instant case, counsel for the plaintiff argues that the very purpose of a cargo ship includes not only transportation of cargo by waterway but also the delivery of the cargo upon arrival at destination; and that the whole commercial operation is broad enough to include the unloading of the ship upon its arrival and when docked at the pier.

█ I think it generally undesirable to undertake to decide a point of this particular character arising under a new type of legislation and without any preceding judicial consideration of the terms of the Act to the situation involved in this case. I think it preferable to await the full determination of just what were the facts regarding the plaintiff's accident and just exactly what occurred at that time which presumably will be developed in the actual trial of the case. And for this reason I think the proper present ruling should be and it is that the special defense based on alleged insufficient service of process is *overruled without prejudice.* And it is

now so ordered this 31st day of January, 1961.

Note 1: As previously mentioned, the Louisiana statute expressly includes "boats, ships, barges and watercraft" (LSA–Rev.Statutes, Supp.1960, title 13, ch. 14, § 3479). And in the Illinois statute "watercraft" is defined as including "any boat, vessel, craft or floating thing designed for navigation in the water." Smith Hurd Ill.Stats.Ann. ch. 110, § 263a. To the same effect is the Ohio statute, Ohio Rev.Code 1960 Supp. title 15, § 1547.01. The Florida statute, F.S.A. § 47.162 is seemingly identical with the Louisiana statute. The Pennsylvania statute specifies particularly "vessels". Purdon's Penna.Statutes Ann.1960 Supp. title 12, §§ 336 and 337. See also the discussion by District Judge Smith of South Carolina in The Saxon, D.C.E.D. S.C.1921, 269 F. 639, at page 641, as to the scope of the term "watercraft" in an Act regarding seizure and confiscation of illegal liquor contained in watercraft.